```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT
```

MARY ANNE STANLEY MAGNUSON,      :
    Plaintiff,                   :    CIVIL ACTION NO.
                                 :    3-06CV759 (JCH)
    v.                           :
                                 :
MICHAEL HARDER and KIM MAIORANO, :    SEPTEMBER 27, 2007
    Defendants.                  :

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 32]**

**I.    INTRODUCTION**

The plaintiff, Mary Anne Stanley Magnuson, brings this action against the defendants, Michael Harder, former Chairman of the State Board of Examiners of Environmental Professionals ("Board"), and Kim Maiorano, the Licensed Environmental Professional ("LEP") Coordinator for the Board. Both of these defendants are sued in their individual capacities. Magnuson brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the Constitution of the United States.

The defendants have filed a Motion for Summary Judgment [Doc. No. 32] seeking to dismiss Magnuson's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**II.    STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>White v. ABCO Engineering Corp.</u>, 221 F.3d 293, 300 (2d Cir. 2000). Once

the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### III. FACTUAL BACKGROUND[1]

On or about February 9, 2006, Magnuson applied to the Department of Environmental Protection ("DEP") to take the May 2006 LEP exam. See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s 56(a)1 Stat.") at ¶ 12 [Doc. No. 33]. The first such exam was administered in July 1997. Id. at ¶ 68. The instructions for Magnuson's application specified "[o]nly that work experience related to the investigation and remediation of releases of hazardous waste or petroleum products into soil or groundwater constitutes relevant work experience." Id. at ¶ 14. The application form indicated that applicants with bachelor or advanced college degrees in a related

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support her allegations.

2

science or engineering field must show they have for at least eight years "engaged in"[2] such investigation and remediation, including at least four years in "responsible charge"[3] of such investigation and remediation.  Id. at ¶ 19.  The instructions also indicated that the Board would consider a number of factors in deciding whether an applicant's experience counts as "responsible charge experience," such as: (1) independent decision making; (2) number of supervisees; (3) whether both investigation and remediation were a substantial part of the job; (4) the nature of an employer's business interests; (5) the extent of scientific or technical methodologies used for conducting investigations and remediations.  Id. at ¶ 18.

As part of her employment history on her application, Magnuson mistakenly put her title as "Owner/President" of Northeast Utilities, while her correct title was Senior Scientist, a position in which she did not supervise any other scientists.  Id. at ¶ 20.  Her application also indicated that, since September 1989, she has been employed as Owner/President of Consulting Environmental Services, Inc., working without employees but with sub-contractors as needed.  Id. at ¶ 22.

In the application section that asked for "Major Responsible Charge Project Listing," Magnuson listed six projects.  Id. at ¶ 24.  Of the six projects she listed,

---

[2]The instructions define "engaged in experience" as "professional experience for which the Board determines that an applicant's primary duties have consistently involved both the investigation and remediation of releases of hazardous waste or petroleum products into soil or groundwater," excluding non-scientific or non-technical activities such as drilling and laboratory analysis.  Def.'s 56(a)1 Stat. at ¶¶ 15-16.

[3]The instructions define "responsible charge experience" as "professional experience for which the Board determines that an applicant's primary duties consistently involve a high level of responsibility and decision making regarding both the investigation and remediation of releases of hazardous waste or petroleum products into soil or groundwater."  Def.'s 56(a)1 Stat. at ¶ 17.

3

Magnuson did not describe her role in remediating releases of hazardous waste or petroleum products into soil or groundwater in Project 3 for Hudson Baylor, or Project 4 for Aviation Components Support. Id. at 28 and 32. In Project 5 for Northeast Utilities, Magnuson testified that there was no remedial action plan to do. Id. at ¶ 49. In Project 6 for Northeast Utilities, she also did not describe any remediation activities and only checked off the "Assessment" box and not the "Remediation" box. Id. at ¶ 37.

On February 16, 2006, a sub-committee of the Board, composed of the defendant, Harder, and Jeff Louriero, reviewed Magnuson's LEP exam application.[4] Id. at ¶ 41. The Review Sheet indicated two concerns: "(1) What is a 'non-certifiable' degree;[5] (2) Need more detailed descriptions of investigation and remediation experience using more recent projects to demonstrate experience (post-1996)." Id. at Def.'s Stat. at Ex. 3, Review Sheet.

At the February 16, 2006 Board meeting, the Board voted to authorize the defendant, Ms. Maiorano, LEP Coordinator, to seek additional clarifying information from eight applicants, including Magnuson. Id. at ¶ 43-44. Maiorano spoke with Magnuson by telephone; Magnuson explained that "non-certifiable" meant that she did not have a teaching certification. Id. at ¶ 45. Maiorano also drafted a letter, signed by Harder as Chairman of the Board on February 17, 2006, which requested that

---

[4]The Board divided the applications among three sub-committees, each consisting of two members. These sub-committees used a Review Sheet and Application Worksheet to review the applications. Def.'s 56(a)1 Stat. at ¶¶ 73-74.

[5]The Registrar's Office of Central Connecticut State University reported on the Board's "Verification of Education" form, that Magnuson had a degree in "Earth Science (non-certifiable)." Def.'s 56(a)1 Stat. at Ex. 3, Verification of Education.

Magnuson submit three additional project descriptions indicating that she had "responsible charge experience," that is, project descriptions showing that she was substantially involved in the investigation and remediation of releases of hazardous waste. Id. at ¶¶ 46, 56. Maiorano further discussed this request with Magnuson in a telephone conversation, during which Maiorano suggested Magnuson look at other (redacted) LEP applications. Id. at ¶¶ 47-48. Magnuson did not avail herself of this opportunity.

On March 3 and March 14, 2006, Magnuson faxed Maiorano copies of three additional project descriptions and her undergraduate transcript, which Maiorano transmitted to the sub-committee that had reviewed Magnuson's application. Id. at ¶¶ 50-52. In one of her additional project descriptions for 151 New Park Avenue, Magnuson described her responsibilities in the future tense, and another project description for O & W Heat was a "simple" project not involving much contamination. Id. at ¶¶ 55, 60-61.

On March 17, 2006, a Board meeting was held in part to decide whether those applicants who submitted additional information had established they were qualified to sit for the exam. Id. at ¶ 53. The Board unanimously voted to deny admission to Applicant No. 2006-0281, which was the number assigned to Magnuson's application.[6] Id. at ¶¶ 63A, 64, 94A. Harder did not participate in the voting, because the Board

---

[6]Prior to the Board's review of applications, LEP Coordinator Maiorano filled out a completeness form for each application and assigned it a specific number. The applicant's name was not placed on the form, which was attached to the front of the application. Def.'s 56(a)1 Stat. at ¶ 71A. Only the particular sub-committee that reviewed the application knew the identity of the applicant; when the entire Board discussed the applications at its meetings, only the applicant numbers were used. Def.'s 56(a)1 Stat. at ¶¶ 71B, 74B.

Chairman only votes if there is a tie vote. Id. at ¶¶ 90, 93. Harder retired from the Board on April 1, 2006. Id. at ¶ 96B.

In a letter signed by Harder and dated March 21, 2006, Magnuson was informed that she had been denied acceptance because the project descriptions in her application "did not demonstrate the requisite responsible charge experience [of at least four years] in evaluating and selecting scientific or technical methodologies for conducting remediation of releases into soil or groundwater." Id. at Ex. 8, March 21, 2006 letter. Nothing in this letter indicated that Magnuson was denied admission because of the "non-certifiable" designation on her undergraduate transcript. Id. at ¶ 67.

Of the nine applicants that were discussed on March 17, 2006, the Board voted to admit five and deny four, including Magnuson, to the May 2006 exam. Id. at ¶ 83. Three of the four applicants whose applications were denied were males, and all four had been given the opportunity to provide the Board with additional information. Id. at ¶¶ 84-88. One of these males received a similar letter as Magnuson, indicating that he lacked the requisite four-year minimum of responsible charge experience. Id. at ¶ 89.

## IV.    DISCUSSION

Magnuson argues that she was denied admission to the LEP exam in violation of the Equal Protection Clause of the U.S. Constitution. The defendants address Magnuson's Equal Protection claim, brought pursuant to section 1983 of Title 42 of the

6

United States Code, based on theories of "class of one" treatment, gender discrimination, and retaliation.[7] See Reply at 1.

## A. Personal Involvement

"Personal involvement of a defendant is a prerequisite to an award of damages under section 1983." Crawford v. Coughlin, 43 F.Supp.2d 319, 323 (W.D.N.Y.1999) (citing McKinnon v. Paterson, 568 F.2d 930, 934 (2d Cir.1997)). Personal involvement is a question of fact. Williams v. Smith, 781 F.2d 319, 323 (2d Cir.1986). A defendant may be personally involved in a constitutional deprivation if he directly participated in the infraction. Id.

Magnuson concedes that she has not produced any evidence of Maiorano's personal involvement in the Board's decision not to admit her to the 2006 LEP exam. See Plf.'s Memorandum in Opposition to Summary Judgment ("Mem. in Opp.") at 6 [Doc. No. 36]. Accordingly, the defendants' motion for summary judgment is granted as to the claims against Maiorano in her individual capacity.

However, Magnuson does not concede that she has not produced sufficient evidence of Harder's personal involvement in the Board's decision. Before deciding this issue, however, the court will first turn to the merits of Magnuson's Equal Protection claims against Harder.

---

[7]Magnuson concedes that "the evidence as developed during discovery in this litigation makes it difficult to determine whether the strict test for comparison applicable to 'class of one' claims can be met here"; thus, she withdraws her Equal Protection claim based on the theory of "class of one" treatment. See Plf.'s Mem. in Opp. at 7.

### B. Gender Discrimination

The Equal Protection Clause of the Fourteenth Amendment directs that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To make out a claim of gender discrimination under the Equal Protection Clause, Magnuson must prove that she suffered purposeful or intentional discrimination on the basis of sex. See Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 118 (2d Cir. 2004). Magnuson may prove her disparate treatment claim "by showing that [she was] treated differently from similarly situated persons or groups. Jock v. Ransom, 2007 WL 1879717, at * (N.D.N.Y. 2007). Thus, she must allege that Harder "intentionally treated [her] application differently from other similar applications." Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 61 (2d Cir. 1985).

The court finds that Magnuson cannot show that "she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000) (discussing "similarly situated" in the Title VII context). Magnuson compares herself to Tim Wasielewski and Joe Santovasi, two males who she claims had "comparable experience as environmental scientists and . . . had worked comparable periods for Northeast Utilities." See Plf.'s Statement of Material Facts at ¶ 15. However, other than the fact that they were her colleagues at Northeast Utilities, Magnuson has provided scant evidence that would support her claim that these two men were similarly qualified. In fact, she has only pointed the court to one paragraph of her deposition testimony, in which she states that "all three of us had

8

about the same amount of experience at [Northeast Utilities]," which caused her to be "blown away" for not having been admitted to take the test. Id. at Magnuson Dep. at 93.

The defendants, on the other hand, have provided evidence that Wasielewski and Santovasi were not similarly situated to her. For example, both these men applied for the 1997 LEP exam, not the 2006 LEP exam. See Def.'s 56(a)1 Stat. at ¶¶ 109, 116. They also both applied to and were placed on the Interim List of Environmental Professionals in 1996, prior to the administration of the first LEP exam in 1997. Id. at Appendix I, Santovasi Interim List Application; Appendix 7, Wasielewski Interim List Application. Pursuant to section 4(h) of Connecticut Public Act 95-183, before the first LEP exam was held, the Board placed persons on the Interim List who had the requisite qualifications, which were identical to the qualifications required for those who applied to take the LEP exam one year later. Those placed on the Interim List were then authorized to perfom "any duties authorized by law to be performed by a licensed environmental professional until such time as the first roster of licensed environmental professionals is published by the board." Id. Thus, when Santovasi and Wasielewski applied to take the LEP exam one year later, they had already been considered authorized to take the exam, based on their qualifications and experience. There is also no evidence that the Board requested additional information from these individuals to supplement their applications before deciding whether to admit them; in fact, the Reviewer's Worksheet on Wasielewski's Application specifically stated that it recommended Interim status. See Def.'s 56(a)1 Stat. at Ex. 3, Appendix 7. It also answered "Yes" to all seven questions relating to responsible charge experience,
9

compared to Magnuson's Application Worksheet, which answered "Yes" to only two of the eight questions regarding responsible charge experience.[8] Id. at Harder Affidavit, Att. G.

The court finds that Magnuson has not created a genuine issue of material fact as to whether she was disparately treated from the men she compares herself with. Moreover, there is no evidence that Harder had any role in making the decision to accept the applications of the other individuals.

Magnuson's equal protection claim of disparate treatment must demonstrate that Harder's actions were taken in order to intentionally discriminate against her based on her sex. "To prove an equal protection violation, claimants must prove purposeful discrimination . . . directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (emphasis added) (citations omitted). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979).

Magnuson has presented no evidence that the Board was aware of her gender when it voted, unanimously, to deny her application. See supra at 5 n.6. Harder also did not participate in the decision to deny the application, so even if he was aware of

---

[8] All of the questions on Wasielewski's Worksheet relating to responsible charge experience were identical to those on Magnuson's Worksheet, with the exception that Magnuson's contained one additional question that Wasielewski's Worksheet did not. Def.'s 56(a)1 Stat. at Ex. 3, App. 7.

10

Magnuson's gender, there is no evidence that he played any role in the Board's vote on March 17, 2006.  Def.'s 56(a)1 Stat. at ¶ 94B; Plaintiff's 56(a)2 Stat. at ¶ 94B. Rather than deny her application immediately, moreover, Harder gave her an opportunity to submit more information in his February 17, 2006 letter to her.  See supra at 5. Additionally, when the Board ultimately voted to deny Magnuson admission to the 2006 LEP exam, it also denied three other applicants, all of whom were males, and one of whom was denied for the same reason as Magnuson.  See supra at 6.

Magnuson argues that the denial of her application to take the LEP exam "occurred under circumstances giving rise to an inference of discrimination since women were disproportionately underrepresented among those permitted to take the exam in 2006."  See Plf.'s Mem. in Opp. at 10-11.  She relies on a June 2006 report which lists the names and scores of each candidate who sat for the test.  See Plf.'s Stat. at LEP report.  Eight of the thirty-one candidates who took the exam were women. Id.  However, the proportion of men who applied and were allowed to take the exam is less than that proportion for women (75% versus 87.5%).  Supp. Affidavit of Maiorano at ¶¶ 12-17.  Magnuson cannot rely on the disproportion between male and female applications; even if that somehow evidenced discrimination, which Magnuson has not shown, she did not suffer from discrimination when she applied.  Her claim is that she was discriminated against when denied the opportunity to take the test.  At that stage, the statistics do not support an inference of gender discrimination.

Thus, because Magnuson has failed to create an issue of fact regarding the manner in which she was treated differently from others similarly situated and whether

there was an intent to discriminate, the court grants summary judgment to the defendant on Magnuson's equal protection claim based on disparate treatment.

**C.     Retaliation**

Magnuson failed to address her retaliation claim under the Equal Protection Clause in her Memorandum in Opposition to Summary Judgment.  See Mem. in Opp. at 2.  To the extent Magnuson brings such a claim, the Motion for Summary Judgment is granted absent objection based on review of the argument and record presented by the defendants.

**V.     CONCLUSION**

For the foregoing reasons, the defendants' Motion for Summary Judgment [**Doc. No. 32**] is GRANTED.[9]  The Clerk is ordered to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 27th day of September, 2007.

     /s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[9]Because the court has granted summary judgment to the defendants on all of Magnuson's claims, the court need not address the defendants' qualified immunity defense.